IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF WEST VIRGINIA

UNITED STATES OF AMERICA

v.  CRIMINAL ACTION NO. 1:06cr19

GREGG ANTHONY BYRD,
          Defendant.

ORDER/OPINION GRANTING GOVERNMENT'S MOTION TO DETAIN

On the 4th day of June 2007, came the United States by Zelda E. Wesley, its Assistant United States Attorney, and also came the defendant, Gregg Anthony Byrd, in person and by his counsel, Mark Schamel and David Anderson, for hearing on the motion of the United States to detain the defendant pending trial. Thereupon, the matter came on to be heard upon the government's motion to detain; upon the duly sworn testimony of Deputy United States Marshal Brian Shepherd and City of Bridgeport, West Virginia Police Sgt. Brian Purkey; upon the pretrial services report prepared and submitted to counsel and to the Court by Adult Pretrial Services Officer Kenneth M. Langston, supplemented by the oral report of Adult Pretrial Services Officer Stacey M. Claxton; upon the proffer of Defendant's counsel; and upon the argument of counsel for defendant and the Assistant United States Attorney.

## A. Contentions of the Parties

The government contends this case is eligible for detention because it involves a 10+ year drug offense, a serious risk Defendant will flee, and and a serious risk of obstruction of justice. The government further contends the Court should detain Defendant because het constitutes a flight risk and a danger to the community, and further asserts the rebuttable presumption as set forth in 18 U.S.C. § 3142(e)(3).

The defendant contends that he is not a flight risk or a danger to the community, and also contends there are conditions of release which could reasonably assure his appearance as required and the safety of any other person and the community. Defendant in particular asserts through proffer that his father is willing and able to act as his Third-Party Custodian and also allow for electronic monitoring.

## B. The Standards

Title 18 § 3142(e) of the United States Code creates a rebuttable presumption that there is no condition or combination of conditions which will reasonably assure the appearance of the person as required and the safety of the community if there is probable cause to believe the defendant committed an offense for which a maximum term of imprisonment of ten years or more is prescribed in the Controlled Substances Act. The Fifth Circuit case of United States v. Hare, 873 F.2d 796 (1989) discusses defendant's burden with respect to the rebuttable presumption. Hare holds that the previously mentioned presumption shifts to the defendant only the burden of producing rebutting evidence, not the burden of persuasion. Hare also holds that the presumption is not a mere bursting bubble that totally disappears from a judge's consideration after defendant comes forward with evidence.

Title 18 § 3142(g) provides the specific factors that are to be considered to determine whether there are conditions of release that will reasonably assure the appearance of the person as required and the safety of any other person and the community. Those factors are:

(1) The nature and consequences of the offense;

(2) The weight of the evidence;

(3) The history and characteristics of the person; and

(4) The seriousness of the danger to any person or the community that would be posed by the person's release.

The United States Court of Appeals for the Fourth Circuit has interpreted these standards as they relate to the issue of danger to any person or the community that would be posed by the persons's release in United States v. Williams, 753 F.2d 329 (4th Cir. 1985). In that case, both defendants had prior felony convictions for distribution of controlled substances and prior convictions of offenses involving dangerous drugs. At the time of arrest, one defendant had two weapons and large amounts of cash and was on parole for prior drug trafficking offenses. The other defendant had a large amount of cash and a beeper. Both defendants were at the top levels of a criminal organization and had been accused of ordering shootings. The Fourth Circuit has set a
stringent standard for pretrial detention in accordance with legislative history of the statute as set forth in S.Rep.No. 98-225, 98th Cong., 2nd Sess., 3 (1983). That report indicated that detention would involve cases in which there were one or more of the following:

(1) A continuing pattern of criminal activity;

(2) Major drug felonies;

(3) Importing and distribution of controlled substances;

(4) Flight was a high risk in a major drug trafficking offense;

(5) Substantial ties to organizations outside the United States involved in the exportation of controlled substances; and

(6) Large financial resources and foreign contacts to escape.

## C. Discussion

Applying the legal standards herein set forth, and in addition to the reasons set forth on the record of the detention hearing, the Court finds clear and convincing evidence that:

1) The charges involve at least a two-year investigation involving undercover police officers, confidential informants, and controlled purchases of drugs.

2) The charges involve substantial quantities of drugs, there being evidence that one buyer alone spent approximately $250,000 over a short period of time purchasing crack cocaine from Defendant and his co-defendant Caswell Richards.

3) The Indictment charges Defendant with conspiracy with intent to distribute over 50 grams of crack cocaine plus marijuana, and names Defendant either individually or with Caswell, in 10 separate distribution counts.

4) There is no evidence that Defendant has any prior convictions.

5) Defendant lived in a community outside Washington, D.C. for approximately two years.

6) Defendant has no history of failures to appear while on bond pending serious charges in the State of Maryland.

7) There is clear and convincing evidence that the United States Marshals had been looking for Defendant for approximately six months prior to his arrest.

8) There is clear and convincing evidence that the Deputy United States Marshal met with Defendant's father on at least one or two occasions, and informed Defendant's father that there was a warrant outstanding for Defendant's arrest; requested the father tell Defendant about the warrant; and requested the father inform Defendant that law enforcement was looking for him and it would be in his best interest to turn himself in.

9) Defendant did not turn himself in, whether family member ever notified him of the warrant or not.

10) On the date of his arrest in Maryland, Deputy United States Marshals in plain clothes came to the apartment where they believed Defendant to be, and walked up to the door. Each Deputy was approximately 5'10" tall and weighed approximately 200 pounds. The Deputies heard sounds inside the apartment. They knocked without announcing themselves, and heard a loud "Thump." One Deputy Marshal went around to the back of the apartment where he saw Defendant running away. He had apparently gone out a back window.

11) Defendant looked back, saw no one following him (the Deputy Marshal had remained out of sight), and began walking towards his car.

12) Defendant got into the car and proceeded to try to drive away.

13) The Deputy Marshal approached Defendant and showed him his badge.

14) Defendant proceeded to put the car in reverse and drive.

15) The Deputy Marshal drew his weapon, at which time Defendant stopped and put up his hands.

16) When asked why he did not turn himself in, Defendant stated that he was "afraid."

17) There is no evidence to support an inference that Defendant was afraid of anyone or anything except law enforcement and his arrest.

Upon consideration of all the testimony, the pre-trial services report, and the arguments of counsel, the Court finds:

(1) The nature and consequences of the offense with which Defendant is charged are serious, consisting of a conspiracy count and ten (10) distribution counts.

(2) The weight of the evidence is substantial that Defendant has committed an offense for which a maximum term of imprisonment of ten years or more is prescribed in 21 U.S.C. §§ 841(b)(1)(B) and 841(b)(1)(C), thus triggering the rebuttable presumption;

(3) The history and characteristics of the person are that:

  a. Defendant has no felony convictions on his record;

  b. Defendant has no known ties to the Northern District of West Virginia, has strong ties to the D.C. area, and has no known prior instances of failure to appear;

  c. Defendant is a native of Jamaica and is a lawful permanent resident of the United States;

  d. Defendant traveled to Jamaica on at least three occasions between 2001 and 2005;

  e. Defendant's father has offered to act as Third-Party Custodian and would permit use of his telephone lines for electronic monitoring of Defendant;

(4) Defendant, by relying on the proffer of his counsel as well as the oral report of the Pretrial Services Officer supplementing the pretrial services report, rebutted the presumption created by 18 U.S.C. § 3142 (e) that there is no condition or combination of conditions which will reasonably assure the appearance of the person as required and the safety of the community notwithstanding that there is probable cause to believe the defendant committed an offense for which a maximum term of imprisonment of ten years or more is prescribed in the Controlled Substances Act.

(5) Defendant's father, who has offered to act as Third-Party custodian had, however, been approached by law enforcement prior to Defendant's arrest. The father was aware of the warrant for Defendant's arrest, and had ample opportunity to convince him to turn himself in, but failed to do so. Alternatively, as addressed in the Pretrial Services Report, the father had had no contact whatsoever with Defendant in at least six months. In either case, the Court finds it inappropriate to rely on Defendant's father to be either willing and/or able to restrict Defendant's actions.

### D. Conclusion

The Court concludes the defendant presents a serious flight risk if released. The Court further concludes there is no condition or set of conditions which the Court could impose which would reasonably assure the appearance of Defendant if released on bond. It is therefore

ORDERED THAT:

1. The defendant be, and he is hereby remanded to the custody of the United States Marshal pending further proceedings in this case;

2. The defendant be confined in a facility separate, to the extent practicable, from persons awaiting or serving sentences or being held in custody pending appeal;

3. The defendant shall be afforded a reasonable opportunity for private consultation with defense counsel;

4. On order of a court of the United States or on request of an attorney for the Government, the person in charge of the corrections facility in which defendant is confined shall deliver the defendant to the United States Marshal for the purpose of an appearance in connection with a court proceeding; and

5. The Clerk shall direct copies of this order to counsel for the United States, to counsel for the defendant, to the United States Marshal, and to the United States Probation Officer.

DATED this 5th day of June, 2007.

/s *John S. Kaull*
JOHN S. KAULL
UNITED STATES MAGISTRATE JUDGE